IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

NACCO MATERIALS HANDLING
GROUP, INC. d/b/a YALE MATERIALS
HANDLING CORPORATION and
NMHG OREGON, INC.,

    Plaintiffs,

v.                                                                                    No. 05-2165 B

THE LILLY COMPANY and
MID-SOUTH LIFT TRUCKS, INC.,

    Defendants.

---

AMENDED ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

---

The Plaintiffs, Nacco Materials Handling Group, Inc. d/b/a Yale Materials Handling Corporation, ("Nacco") and NMHG Oregon, Inc. ("NMHG"), filed suit against the Defendants, the Lilly Company ("Lilly") and Mid-South Lift Trucks, Inc. ("MidSouth"), alleging trademark infringement, unfair competition, and trademark dilution in violation of the Lanham Act. See 15 U.S.C. § 1051 et seq. ("Nacco II")  The Plaintiffs have also contended that any application by this Court of Tennessee Code Annotated § 47-25-1301 et seq. to the underlying dealership litigation would constitute a violation of the Commerce Clause of the United States Constitution.  Before the Court is the Defendants' motion to dismiss based upon the Plaintiffs' failure to state a claim.  See Fed. R. Civ. P. 12(b)(6).  The Plaintiffs have responded, and this motion is now appropriate for disposition.  For the reasons set forth below, the motion to dismiss is GRANTED.

BACKGROUND

The instant action arises from a business relationship involving Nacco and Lilly which is the subject of another lawsuit before this Court.  See Nacco Materials Handling Group, Inc. v. Toyota Materials Handling USA, Inc. et al., No. 03-2561 (W.D. Tenn.) ("Nacco I").  This Court has previously summarized the facts of these interrelated cases as follows:

> Yale, as an operating division of NACCO, manufactures and supplies lift trucks, also called forklift trucks, and related products to retailers for resale to businesses or individuals in need of heavy-duty equipment commonly used for moving inventory throughout a warehouse.  Lilly is a retailer which resells and services lift trucks in parts of Tennessee, Mississippi, and Arkansas.  For the past fifty years, Yale has had a supplier relationship with Lilly.  In 1992, the Plaintiff redrafted its dealer contracts to include an exclusivity clause, which prohibited its dealers from selling or promoting any products that compete with Yale.  On July 2, 2002, Plaintiff and Defendant Lilly renewed their contractual relationship and entered into two Dealer Marketing Agreements, which are the subject of this dispute.
> 
> Agreement 062 grants Lilly the exclusive right for three years to sell and service Yale products in Memphis, Tennessee, northern Mississippi, and western Arkansas (hereinafter "Memphis Agreement").  (Transcript of Proceedings at 64 ("Tr. at __").)  The other agreement, Agreement 050, gives Lilly the same three year term for the middle Tennessee area, including Nashville (hereinafter "Nashville Agreement").  (Tr. at 68.)  Included in both agreements is Section 3.15 which provides that the "[d]ealer agrees not to sell or offer for sale during the term of the Marketing Agreement new equipment which competes directly with Yale Products."  (Answer Am. Compl. Counter-Compl. Ex. A & B.)  Section 3.14[1] of the marketing agreements contains a "good will" provision and a "business ethics" provision requiring the dealer to "actively develop, preserve and promote the goodwill and reputation of Yale, its goods and services and [to] exercise commercial good faith and honesty in its business dealings with Yale and third parties."

---

[1] Section 3.4 of the marketing agreements contains similar language to Section 3.14.  Section 3.4 requires Lilly to engage in "actively and effectively soliciting and promoting on a regular and frequent basis all usual and potential customers in the Management unit . . . ."  (Answer Am. Compl. Counter-Compl. Ex. A & B.)

In the Spring and Summer of 2003, the relationship between the parties began to deteriorate. During that time period, a dealer for Toyota in Memphis, Tennessee was being terminated due to questionable business practices. Toyota began talking to Lilly about becoming a dealer for it in the Memphis area, although the exact date when Lilly began seriously considering Toyota's offer is disputed. Thomas Clark, III, the president of Lilly, testified at the preliminary injunction hearing that on May 5, 2003 he first met the officers of Toyota in San Antonio at a material handling convention. (Tr. at 71.) Clark stated that he was approached by Toyota on June 24, 2003 regarding the possibility of replacing the current Toyota dealer in Tennessee. (Tr. at 72.)  On July 9, 2003, Lilly entered into a non-binding letter of intent with Toyota to become its dealer in the Memphis area. (Tr. at 73.)  Conversely, John Levine, a vice president of counter balance sales for Yale, testified that "rumors" began to circulate in March 2003 about Lilly's plan to become a Toyota dealer and alleged that Lilly had been dishonest about its intentions. (Tr. at 148.)  Levine stated that he asked Craig Avery, chief operating officer for Lilly, on July 3, 2003 "point blank" whether Lilly was trying to become a Toyota dealer to which Avery answered that he was not doing anything with Toyota. (Tr. at 150-51.) Levine claimed that Avery's answer was substantially the same on July 7, 2003. (Tr. at 152-53.)  On July 15, Levine asserts that Avery finally told him that Lilly was merely buying a Toyota dealership to convert to a Yale dealership but stated that nothing had been signed between them. (Tr. at 153-55.)

Lilly had its final meeting with Yale on July 21, 2003 where Colin Wilson, president of NACCO for the Americas, and Don Chance, president of Yale, allegedly threatened to terminate both the Memphis and Nashville Dealer Agreements and to initiate litigation against Lilly and Toyota as well as Lilly's officers if Lilly decided to represent Toyota. (Tr. at 78-83.) On July 24, 2003, Toyota agreed to indemnify Lilly for litigation expenses related to any legal action which Yale might take if Lilly became a dealer for Toyota. (Tr. at 105.) Several days later, Lilly's board of directors met and decided to proceed with the Toyota arrangement. (Tr. at 88.) On August 1, 2003, Lilly received a letter from Yale terminating the Memphis and Nashville agreements for violating Section 3.15 of the agreements.

Yale submits that Lilly's motive for seeking to become a Toyota dealer was to regain Federal Express, a Memphis-based corporation, as a client. In the past, Federal Express used Yale forklifts, and Lilly serviced the account which resulted in significant revenue for Lilly. (Tr. at 125.) However, Federal Express opted to use Toyota for its material handling needs and thus, ceased its

>dealings with Lilly. The Plaintiff's claim that Lilly was seeking to regain the Federal Express account was rebutted by Craig Avery who testified that although the Federal Express business had produced significant revenue in the past, Lilly's parts and service business had become a large part of its present revenue production, with Federal Express only adding marginal revenue. (Tr. at 125-28.) Thus, Avery claimed that regaining the Federal Express business was not a motivating factor in Lilly's discussions with Toyota. (Tr. at 127.)
>
>On July 29, 2003, Yale filed a complaint in Shelby County, Tennessee Circuit Court against Toyota and Lilly. The Defendants removed the action to this Court based on diversity of citizenship. See 28 U.S.C. § 1331. Thereafter, Lilly filed its application for a preliminary injunction on which a hearing was conducted. The parties subsequently attempted to resolve their disputes through private mediation, which proved unsuccessful.

Nacco Materials Handling Group, Inc. v. Toyota Materials Handling USA, Inc., 366 F. Supp. 2d 597, 599-601 (W.D. Tenn. 2004) (footnote omitted).

In Nacco I, Lilly moved for a preliminary injunction prohibiting Nacco from terminating the dealership agreements. After a hearing, this Court granted Lilly's motion finding that Lilly had a "strong probability of suffering irreparable harm and [a] strong likelihood of success against termination [of the contract]." Nacco Materials Handling Group, Inc, 366 F. Supp. 2d at 611.

Subsequent to this Court's issuance of the preliminary injunction, Nacco sent Lilly notice that it would not renew the dealership agreements for Memphis and Nashville when they expired in July 2005. Lilly responded by filing another application for preliminary injunction. See (Order Granting in Part, Den. in Part Lilly's Second Mot. for Preliminary Injunction at 3). Nacco also sent to Lilly notice in April 2005 that Lilly was in default of the dealership agreements "by failing to comply with the 'best efforts' provision and violating [Nacco's] policies regarding the use of its trademarks." (Id.). This caused Lilly to file its third application for a preliminary injunction. (Id.).

4

Concerning the second and third applications for a preliminary injunction, this Court concluded the issue was "whether [Nacco] has good cause not to renew the dealer agreements." (Id. at 4). This Court found that Nacco did not have good cause to terminate the Nashville agreement but did have good cause to terminate the Memphis agreement, and thus granted the injunction with respect to the Nashville agreement but denied it with respect to the Memphis agreement. (Id. at 26-28).

During the course of the foregoing litigation, Nacco and NMHG filed the instant action against Lilly and MidSouth alleging trademark infringement. Specifically, the Plaintiffs claim the Defendants are violating the YALE trademarks by "using the YALE(R) Marks in a manner not approved by NMHG Oregon and [Nacco] . . . ." (Compl. ¶ 5(a)). However, the alleged improper usage stems from the facts as set out in Nacco I, i.e., breach of the dealership agreements, which the Plaintiffs contend make the Defendants' continued usage of the trademarks ongoing violations of various provisions of the Lanham Act. As the Plaintiffs aver in their complaint,

> [a]ny use by [Defendants] of the YALE(R) Marks without a license to do so or any use by [Defendants] that does not comply with the [Dealer Agreements] represents or would represent trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).
>     . . . .
> [a]ny use by [Defendants] of the YALE(R) Marks without a license to do so or any use of the marks by [Defendants] that does not comply with the [Dealer Agreements] represents or would represent trademark dilution in violation of Section 43(c) of the Lanham Act .
>     . . .

(Compl. ¶¶ 42, 49). The complaint also similarly states a cause of action for false designation of origin in violation of the Lanham Act. See 15 U.S.C. § 1125(a)(1). Finally, the Plaintiffs in Nacco II contend that to the extent Tennessee Code Annotated section 47-25-1301 is construed by the

5

Court in Nacco I as prohibiting Nacco from enforcing the Dealership Agreements as written, it would violate the Commerce Clause of the United States Constitution.

## STANDARD OF REVIEW

Rule 12(b)(6) permits dismissal of a lawsuit for failure to state a claim upon which relief could be granted. See Fed. R. Civ. P. 12(b)(6). The Rule requires the Court to "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir. 1998). "The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." Conley v. Gibson, 355 U.S. 41, 47 (1957). However, "[t]o avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all the material elements of the claim." Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003).

## ANALYSIS

The Defendants contend that the Plaintiffs' complaint should be dismissed because their allegations based on violations of the Lanham Act and the allegation concerning the Commerce Clause are "wholly without merit . . . ." (Defs.' Mot. to Dismiss at 4). They assert that the Lanham Act does not apply in a situation where one manufacturer's brand of product is sold alongside another manufacturer's similar product. The Defendants further insist that the Commerce Clause does not preempt the application of Tennessee law as applied by this Court in Nacco I. Finally, the Defendants request attorney's fees pursuant to 15 U.S.C. § 1117.

1. Lanham Act Violations

The trademark infringement portion of the Lanham Act provides,

> (1) Any person who shall, without the consent of the registrant--
>
>> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,
>
> shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1). The false designation of origin portion of the Act provides,

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).  Finally, the trademark dilution portion of the Act provides,

> (1) Injunctive relief
>
> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1).

### A. Trademark Infringement

In order for the Plaintiffs to prevail on a claim of trademark infringement they "must show: (1) that [they] own[] a valid, protectable trademark; (2) that the defendant used the mark in commerce and without the registrant's consent; and (3) there was a likelihood of consumer confusion." Abercrombie & Fitch Trading Co. v. Fashion Shops of Ky., Inc., 363 F. Supp. 2d 952, 957 (S.D. Ohio 2005) (citations omitted). "'The touchstone of liability under § 1114 is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties.'" Paccar, Inc. v. Telescan Techs., L.L.C., 319 F.3d 243, 249 (6th Cir. 2003) (quoting Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr., 109 F.3d 275, 280 (6th Cir. 1997)).

In this case, Lilly and MidSouth market and sell forklifts manufactured by the Plaintiffs under the brand Yale, which is a registered trademark.  The Court finds the Defendants' actions, as alleged by the Plaintiffs, are not "likely to cause confusion among consumers regarding the origin

of the" forklifts. Id. Here, Nacco insists the confusion originates from Lilly's decision to sell Toyota forklifts alongside, and in competition with, Yale forklifts. However, Lilly's selling of Toyota forklifts cannot possibly cause consumers to be confused as to the origin of the Yale forklifts. More importantly, as this Court held in Nacco I, the defendant's sale of the Yale forklifts was pursuant to contract. The Court in Nacco I issued an injunction enforcing the terms of the Dealership Agreements; therefore, any claim by these Plaintiffs that the Defendants used the Yale trademark without Nacco's consent is without merit. See Nacco Materials Handling Group, Inc., 366 F. Supp. 2d at 611.

Essentially, the Plaintiffs are dissatisfied with Lilly's decision to sell Toyota brand forklifts alongside Yale forklifts, claiming such action violates the Dealership Agreements (Nacco I) and the Lanham Act (Nacco II). The Plaintiffs have attempted to morph a breach of contract case into one for trademark infringement.[2] The Court, however, finds the Plaintiffs' attempt unavailing, and their claim for trademark infringement is hereby DISMISSED.

      B.     Unfair Competition Claims

The Plaintiffs claim that the Defendants conduct in selling Toyota forklifts alongside Yale forklifts is likely to cause confusion and deceive consumers as to the origin, sponsorship, or approval

---

[2] While there are other cases involving claims for both breach of contract and trademark infringement or unfair competition, it is the Defendant/infringer's use of a junior mark in those cases that gives rise to the trademark infringement claim. See, e.g., Adidas America, Inc. v. Payless Shoesource, Inc., 166 Fed. Appx. 268, 270 (9th Cir. 2006) (recognizing Plaintiff's breach of contract and trademark infringement claims in a case involving Defendant's sale of shoes bearing stripes and markings sufficiently similar to Plaintiff's famous mark as to cause likelihood of confusion). Another example of cases involving breach of contract and trademark infringement are those arising from franchise agreements. See, e.g.,Kissinger, Inc. v. Singh, 304 F. Supp. 2d 944, 947 (W.D. Mich. 2003) (recognizing that plaintiff's infringement action under the Lanham act arose out of defendant's breach of the franchise agreement).

of the Yale forklifts.

As the Sixth Circuit has stated,

> "Today, the keystone of that portion of unfair competition law which relates to trademarks is the avoidance of a likelihood of confusion in the minds of the buying public. Whatever route one travels, whether by trademark infringement or unfair competition, the signs give direction to the same enquiry-whether defendant's acts are likely to cause confusion." J. Thomas McCarthy, 1 McCarthy on Trademarks and Unfair Competition §§ 2:7-2:8 (4th ed.1996); see also AutoZone, Inc. v. Tandy Corp., 373 F.3d 786, 791 (6th Cir.2004) (noting that federal trademark and unfair competition claims require the likelihood of confusion inquiry); Champions Golf Club, Inc. v. The Champions Golf Club, Inc., 78 F.3d 1111, 1123 (6th Cir. 1996) ("[F]alse designation is simply a species of unfair competition . . . . That the two claims are one and the same is made clear both by the language of the statute, and by many cases."); Carson v. Here's Johnny Portable Toilets, Inc., 698 F.2d 831, 833 (6th Cir. 1983) (stating that Michigan common law unfair competition claims use the same likelihood of confusion test as the Lanham Act); K'Arsan Corp. v. Christian Dior Perfumes, Inc., No. 97-1867, 1998 WL 777987, at *8 (6th Cir. Oct.21, 1998) (unpublished) (stating that the likelihood of confusion inquiry applies to claims of unfair competition and of trademark infringement under Michigan common law).

Gen. Motors Corp. v. Keystone Auto. Indus., Inc., 453 F.3d 351, 354 (6th Cir. 2006).

In this case, as previously noted, Lilly's selling Toyota forklifts cannot possibly cause confusion to consumers as to the origin of the Yale forklifts. Indeed, there is no likelihood of confusion whatsoever. One forklift contains the famous mark Yale; the other contains the famous mark Toyota. As there is no possibility of confusion based upon the facts alleged in the complaint, the Plaintiffs' cause of action pursuant to 15 U.S.C. § 1125(a)(1)[3] is hereby DISMISSED.

---

[3]The Court notes that the complaint states as its third cause of action activities by the Defendants in violation of 15 U.S.C. § 1125(a)(1), (2). (Compl. ¶ 45). However, 15 U.S.C. § 1125(a)(2) provides,

> As used in this subsection, the term "any person" includes any

      C.    <u>Trademark Dilution</u>

The Plaintiffs claim that any use by the Defendants of the Yale trademark "that does not comply with the [Dealership Agreements] represents" trademark dilution in violation of the Lanham Act. This contention is without merit.

Dilution in the context of section 1125 is defined as "the lessening of the capacity of a famous mark to identify and distinguish goods or services." <u>Moseley v. Secret Catalogue, Inc.</u>, 537 U.S. 418, 421 (2003). Trademark dilution cases arise out of instances where a junior mark imitates a famous mark to the dilution of the famous mark. <u>Id.</u> at 433. The <u>Moseley</u> case was based upon the petitioner's use of the junior mark "Victor's Little Secrets" which diluted the famous mark "Victoria's Secret." <u>Id.</u> at 422-24.

In this case, the Plaintiffs have not alleged that the Defendants have commenced the use of a junior mark. Rather, they argue that the Defendants' selling of Toyota forklifts alongside Yale forklifts dilutes the Yale trademark. This simply is not so. The Toyota name is not a junior mark which would lessen the ability of Yale to identify its own goods; indeed, Toyota is itself a separate famous mark. Thus, the Plaintiffs' have failed to state a claim for trademark dilution, and that count of the complaint is hereby DISMISSED.

      D.    <u>Commerce Clause</u>

---

> State, instrumentality of a State or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this chapter in the same manner and to the same extent as any nongovernmental entity.

The Court concludes that the Plaintiffs' allegations concern only section 1125(a)(1)(A)-(B), <u>see</u> <u>supra</u> at 7-8, rather than section 1125(a)(2).

The Plaintiffs allege that the Court's application in <u>Nacco I</u> of Tennessee Code Annotated section 47-25-1301 et seq. violates the Commerce Clause of the United States Constitution to the extent it precludes Nacco from "enforcing the Exclusivity, Best Efforts, Business Ethics, and Trademark License Provisions of the [Dealership Agreements]."  (Compl. ¶ 53).

This exact issue was addressed and rejected in <u>Power & Telephone Supply Co. v. Harmonic, Inc.</u>, 268 F. Supp. 2d 981 (W.D. Tenn. 2003).  In <u>Power & Telephone Supply Co.</u>, the court was presented with the argument that Tennessee Code Annotated section 47-25-1301 et seq. "violate[d] the dormant commerce clause of Article I, Section 8 of the United States Constitution."  268 F. Supp. 2d at 990.  The court there found that these provisions of Tennessee law did not place an undue burden on interstate commerce.  <u>Id.</u> at 991 ("[T]he burden on interstate commerce does not appear to be excessive in relation to the local benefits . . . .").[4]  This Court agrees with the conclusions reached relating to this issue in <u>Power & Telephone Supply Co.</u>  Therefore, the motion to dismiss the Plaintiffs' claims based on the Commerce Clause is GRANTED.

    E.    <u>Attorney's Fees</u>

The Defendants assert in their motion to dismiss that they are entitled to attorney's fees pursuant to 15 U.S.C. § 1117.

15 U.S.C. § 1117 provides, in part, that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  The Court finds, in its discretion, that this is not one of those "exceptional cases," and thus, DENIES the Defendants' request for attorney's fees.

---

[4]Nacco has attempted to distinguish the provisions of Tenn. Code Ann. § 47-25-1301 et seq. considered in <u>Nacco I</u> from those addressed by the court in <u>Power & Telephone Supply Co.</u>  The Court, however, finds this attempt unavailing and concludes that the holding in <u>Power & Telephone Supply Co.</u> is applicable here.

12

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED.

**IT IS SO ORDERED** this 5th day of June, 2007.

                                      s/ J. DANIEL BREEN
                                      UNITED STATES DISTRICT JUDGE